NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MERALY ROMERO RIVERA,**

    **Plaintiff,**

**v.**                **Case No. 6:17-cv-2021-Orl-41KRS**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Meraly Romero Rivera, seeking review of the final decision of the Commissioner of Social Security finding that her previously determined disability ceased as of December 1, 2014. Doc. No. 1. Defendant, the Commissioner of Social Security ("Commissioner"), filed an answer and a certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 11, 13. The parties also filed their Joint Memorandum, Doc. No. 15.[1]

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 14. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

On July 22, 2011, the SSA concluded during administrative review of Rivera's application for disability benefits that she was disabled as of September 28, 2010 due to an affective disorder with a secondary diagnosis of carpal tunnel syndrome.   R. 108.   The Disability Determination and Transmittal form referred only to a mental residual functional capacity ("MRFC") assessment dated July 22, 2011 as the basis of the decision.   *Id.*   However, in a subsequent document, the SSA stated that it considered evidence from the following in making the determination that Rivera was disabled as of September 28, 2010:   Carmen L Martinez-Cotto MD; Milagros Ortiz-Tavarez MD; Zaida Boria-De-Blas MD; Servicios Radiologicos Asociados; and Romero Rivera, Meraly. R. 111.   This document states that Rivera was found to be disabled due to depression and carpal tunnel syndrome.   *Id.*[2]

In 2014, the SSA conducted a continuing disability review.   It determined that Rivera's condition had improved and that she was able to work as of December 2014.   *Id.*   Rivera requested reconsideration of that determination.   R. 118.

On August 28, 2015, a disability hearing officer ("DHO") held a hearing to determine whether Rivera's condition had improved related to her ability to work.   R. 123-27.   Both Rivera and her friend testified that Rivera continued to be disabled due to fibromyalgia, carpal tunnel syndrome, depression and anxiety.   R. 130.   The DHO also considered a consultative psychological evaluation by Dr. Martinez-Cotto, and records from SAAFE Behavioral Services ("SAAFE") , Central Florida Arthritis and Osteoporosis and Deltona Medical Center.   R. 133.

---

[2] The record as a whole supports the conclusion that Rivera was initially determined to be disabled based only on her mental impairment.   *See, e.g.,* R. 132 (disability hearing officer wrote that Rivera "was previously allowed Social Security Disability effective 9/28/10 due to major depressive disorder").

The DHO concluded that there had been medical improvement in Rivera's ability to work since the July 22, 2011 comparison point date decision ("CPD").[3]   R. 129-36.   The DHO concluded that Rivera had the ability to perform unskilled, sedentary work.   R. 136.   Therefore, the DHO found that Rivera no longer met the criteria for Social Security disability.   R. 131.

Rivera requested review of the cessation of disability determination by an ALJ.   R. 144. An ALJ held a hearing on October 12, 2016, at which Rivera, accompanied by an attorney, and a vocational expert ("VE") testified.   R. 44-65.   The ALJ considered the following record evidence: consultative psychological evaluation by Dr. Martinez-Cotto; records from SAAFE (including records from Antonio Cubano, M.D.); records from Central Florida Arthritis and Osteoporosis; records from Deltona Medical Center (including records from Manuel Crisanto, M.D.); x-rays; records of Kashyap Patel, M.D.; records from the Borland-Groover Clinic (including records of Sunil P. Pasricha, M.D.); records of Maria Vintimilla, M.D., a rheumatologist; records of Sonia Ramirez-Seifert, M.D.; records from Stewart-Marchman-ACT Behavioral Healthcare (including records of Patricia Rogers, ARNP); the opinions of David Clay, Ph.D. (R. 526-39), Ronald Kline, M.D. (R. 540-47), Jennifer Meyer, Ph.D. (R. 612-25), and Debra Troiano, M.D. (R. 642-49), each of whom were State agency consultants who prepared functional capacity assessments after review of Rivera's records; statements of a third-party; and statements by Rivera.   R. 27-33.   There is no indication that the ALJ reviewed any records from Dr. Ortiz-Tavarez.

---

[3] The CPD is the most recent favorable medical decision, that is, the latest final decision involving consideration of the medical evidence and the issue of whether the claimant was disabled or continued to be disabled.   20 C.F.R. § 404.1594(b)(7).

Thereafter, the ALJ issued a Decision.   R. 23-36.   The ALJ found that at the CPD, Rivera had a major depressive disorder, which prevented her from adequately completing a normal workday and workweek.   He determined that Rivera had not engaged in substantial gainful activity through the date of the Decision.   R. 25.

The ALJ found that since December 1, 2014, Rivera had the following severe impairments: fibromyalgia; history of left carpal tunnel syndrome with trigger finger corrective surgery; major depression; general anxiety; asthma; arthralgias; disorders of the spine (cervical, thoracic and lumbar); peripheral vascular disease; dysphagia; and, gastroesophageal reflux disease.   R. 25. These impairments or combination of impairments did not meet or equal any impairments listed in the SSA regulations.   *Id.*

The ALJ found that there had been a decrease in the medical severity of Rivera's mental impairment by December 1, 2014.   In reaching this conclusion, the ALJ compared the report of Dr. Martinez-Cotto with treatment records from SAAFE from January 2014 through January 2015. R. 27.   The ALJ concluded that since December 1, 2014, Rivera had the MRFC to "perform simple tasks and simple work related decisions with no more than occasional interaction with the public, supervisors and co-workers.   Time of[f] task could be accommodated by normal breaks."   *Id.* Accordingly, the ALJ concluded that improvement in Rivera's medical impairment was related to the ability to work because it resulted in an increase in her RFC.   R. 28.

The ALJ further found that since December 1, 2014, Rivera had the ability to perform light work as follows:

> [N]o more than occasional use of foot and hand controls; no more than occasional reaching overhead; no more than frequent handling, fingering, and feeling; no climbing of ladders and scaffolds or crawling; no more than occasional climbing of ramps and stairs or kneeling; no more than frequent balancing, stooping, and

crouching; limited to hearing and understanding simple oral instructions due to limited proficiency with the English language; no exposure to unprotected heights, moving mechanical parts, extreme cold, or extreme heat; limited to simple tasks and simple work related decisions with no more than occasional interaction with the supervisors, co-workers and the general public; and time off tasks can be accommodated by normal break.

R. 28.   The ALJ concluded that since December 1, 2014, Rivera was unable to perform her past relevant work.   R. 34.   Based on the testimony of the VE, the ALJ found that, since December 1, 2014, there were jobs available in the national economy that Rivera could perform, such as the light, unskilled jobs of housekeeping cleaner and cafeteria attendant.   R. 35.   Therefore, the ALJ found that Rivera's disability ended on December 1, 2014 and that she had not become disabled again since that date.   *Id.*

Rivera requested that the Appeals Council review the ALJ's decision, and she supported the request with a new statement from her and other information.   R. 4-5, 286.   On September 21, 2017, the Appeals Council found no reason to review the ALJ's decision.   R. 1-4.

Rivera now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Rivera having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## LAW GOVERNING DETERMINATION OF CESSATION OF DISABILITY.

After an individual is awarded disability benefits by the SSA, those benefits will cease upon a showing by the Commissioner that there has been medical improvement related to the ability to work.   42 U.S.C. § 423(f); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982), *superseded by statute on other grounds as stated in Elam v. RR Retirement Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).   Comparison of original medical evidence and new medical evidence is necessary to make a finding of improvement.[4]   *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) (per curiam).

Any determination regarding whether benefits continue must be made "on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled."   42 U.S.C. § 423(f).   It remains the Commissioner's duty to prove medical improvement by substantial evidence.   *Id.*; *see also* 20 C.F.R. § 404.1594(a).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated an eight-step inquiry that must be followed in determining whether benefits may be terminated for medical improvement.   *See* 20 C.F.R. § 404.1594(f).   In sum, the ALJ must ask:

(1) Is the claimant engaged in substantial gainful activity? (If so, the disability has ended.)

(2) If not, does the claimant have an impairment of combination of impairments which meets or equals the severity of an impairment listed in [20 C.F.R. Part 404, Subpart P, Appendix 1]? (If so, the disability is continuing.)

---

[4] "Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled."   20 C.F.R. § 404.1594(b)(1).   Medical improvement is assessed by review of "symptoms, signs and/or laboratory findings."   *Id.*

6

NOT FOR PUBLICATION

(3) If not, has there been medical improvement?

(4) If there has been medical improvement, is it related to the claimant's ability to do work?

(5) If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing.)

(6) If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended.)

(7) If so, is the claimant able to engage in past relevant work? (If so, the disability has ended.)

(8) If not, is the claimant able to perform other substantial gainful activity?

*Griego v. Sullivan*, 940 F.2d 942, 944 n.1 (5th Cir. 1991) (per curiam) (citing 20 C.F.R. § 404.1594(f)).

## SUMMARY OF THE FACTS.

The only issue raised in the Joint Memorandum is whether the ALJ erred by finding medical improvement without reviewing all of the medical evidence relied upon to find that Rivera was disabled as of the CPD.  Doc. No. 15, at 7.  Accordingly, after a thorough review of the record, I will only summarize facts regarding the evidence relied upon to support the original disability determination and identify which of that evidence was in the record and considered by the ALJ.

Jesus Soto Espinosa, Ph.D., prepared an MRFC assessment dated July 22, 2011.  R. 467-83.  Dr. Soto Espinosa stated that he considered Rivera's reports of her activities of daily living and the opinions of Dr. Ortiz-Tavarez and Dr. Martinez-Cotto.  R. 483.  Dr. Soto Espinosa opined that Rivera did not retain the ability to adequately complete a normal workweek and workday.  R.

483.   This appears to be the MRFC referred to in the SSA's July 22, 2011 disability determination.
R. 108.

The record does not contain any treatment records from Dr. Ortiz-Tavarez even though
internal SSA records reflect that those records were requested and received.   R. 392, 464.   In his
MRFC, Dr. Soto Espinosa summarized Dr. Ortiz-Tavarez's findings as follows: "Dr. Ortiz
describes claimant as depressed, easily distracted, poor judgment and insight, psychomotor
retardation and poor stress tolerance."   R. 483.   In CDR Analysis Forms dated October 9, 2014
and March 10, 2015, agency personnel used the same language to summarize Dr. Ortiz-Tavarez's
opinions.   R. 524, 610.

The record also contains an English translation of a report of examination of Rivera by Dr.
Martinez-Cotto, a one-time examining psychiatrist, dated July 5, 2011.   R. 401-04.   Rivera told
Dr. Martinez-Cotto that she was tired, isolated, sad, and that she cried, did not want to eat and could
not sleep.   She spent most of her days lying down.   She needed help to perform personal hygiene.
She could not make decisions or complete tasks without interruption.   She received psychiatric
treatment from "Dr. Otic."[5]   R. 401-02.   Rivera also stated that she had been diagnosed with
bilateral carpal tunnel syndrome ("CTS") and tendonitis in both of her thumbs.   She had an
operation on her left hand, but her condition was worse after the surgery.   R. 401.   Upon
examination, Dr. Martinez-Cotto observed that Rivera kept little eye contact when speaking.   Her
mood was sad, irritable, tearful and anhedonic.   Her thinking was logical, coherent and relevant.
She was constantly crying.   After administering psychological tests, Dr. Martinez-Cotto opined

---

[5]  Because there is no other reference to "Dr. Otic" in the record, it appears that Rivera referred to Dr. Ortiz-
Tavarez.

NOT FOR PUBLICATION

that that Rivera's immediate memory was regular but her short term memory was poor.   Rivera

was rather disoriented or partially oriented at times.   R. 402-03.   Dr. Martinez-Cotto also opined

that Rivera's social judgment was impaired by her emotional condition, and she had "poor tolerance

of frustration, poor ability to adapt and persevere . . . ."   R. 404.   Dr. Martinez-Cotto's diagnostic

impression was single episode depression–more severe, and she noted that Rivera's prognosis was

poor.   Dr. Martinez-Cotto opined that Rivera's "ability to remember, concentrate, pay attention,

persevere, [engage in] social interaction, and adapt is diminished."   *Id.*

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Rivera asserts that the ALJ erred as a

matter of law by failing to compare the medical evidence before the CPD with the medical evidence

after the CPD to determine whether Rivera's condition improved with respect to her ability to work.

This is the only issue I will address.

The U.S. Court of Appeals for the Eleventh Circuit has stated that because of the

presumptive validity of an initial determination of disability, "there can be no termination of . . .

benefits until there is substantial evidence of actual improvement to the point of no disability."

*Vaughn*, 727 F.2d at 1043 (citing *Simpson*, 691 F.2d at 969).   In *Vaughn*, the Eleventh Circuit

reversed the decision of an ALJ finding that Vaughn's condition had improved because the ALJ

considered only current evidence of Vaughn's functional capacity, not the medical evidence upon

which Vaughn was originally found to be disabled.   The Court found that "[w]ithout such a

comparison, no adequate finding of *improvement* could be rendered."   *Id.*

Rivera contends that the same deficiency exists in this case.   As discussed above, the

original disability determination was based on the MRFC by Dr. Soto Espinosa, the report of Dr.

NOT FOR PUBLICATION

Martinez-Cotto, a one-time examining psychiatrist, and the records of Dr. Ortiz-Tavarez, who Rivera identified as a treating psychiatrist.  The ALJ's decision reflects that he considered the report of Dr. Martinez-Cotto, but he did not mention any records from Dr. Ortiz-Tavarez or the MRFC of Dr. Soto Espinosa.  The only record evidence of Dr. Ortiz-Tavarez's opinion are the summaries Dr. Soto Espinosa's MRFC dated July 22, 2011 and in later CDR Analysis Forms. Therefore, the record is clear that the ALJ did not consider the treatment records of Dr. Ortiz-Tavarez when he concluded that Rivera's condition had improved to the point that she was no longer disabled.

Counsel for the Commissioner concedes that the ALJ did not consider Dr. Ortiz-Tavarez's treatment records.  Doc. No. 15, at 17 (stating "while Dr. Ortiz's earlier treatment records were not available, the ALJ did have the DDS's summary of his findings before him, as well as the notation of controlling weight the DDS afforded him," citing the MRFC of Dr. Soto Espinosa and one CDR Analysis Form).  Nevertheless, counsel for the Commissioner contends that the argument that Dr. Ortiz-Tavarez's actual records are missing from the materials considered by the ALJ "appears to be based on speculation."  *Id.* at 17 n.3.  This argument is not supported by the record.  Notations from the SSA in the record reflect that the agency requested records from Dr. Ortiz-Tavarez, R. 463, and that reports from Dr. Ortiz-Tavarez were received on June 15 and July 15, 2011, R. 392. Dr. Soto Espinosa summarized Dr. Ortiz-Tavarez's treatment records in his MRFC.  All of these facts support the conclusion that the records of Dr. Ortiz-Tavarez were in an application file held by the Department of Disability Determinations.

Alternatively, counsel for the Commissioner argues that the absence of Dr. Ortiz-Tavarez's records does not warrant reversal of the ALJ's decision because Rivera bears the burden of

10

NOT FOR PUBLICATION

producing evidence that she is disabled, and she has not shown how the ALJ's reliance on a summary of those records prejudiced her.   Doc. No. 15, at 15-16.   This argument is based on an incorrect statement of the law.   The burden lies with the Commissioner to prove medical improvement by substantial evidence.   *Townsend v. Comm'r of Soc. Sec.*, No. 6:13-cv-1783-Orl-DAB, 2015 WL 777630, at \*3 (M.D. Fla. Feb. 24, 2015) (citing *Simpson*, 691 F.2d at 969).   As stated in *Vaughn*, this burden is met only when the ALJ compares the medical evidence upon which the claimant was originally found to be disabled with the evidence developed after the CPD.   727 F.2d at 1043.   Review of a summary of the pre-CPD evidence is insufficient to meet this burden. *See Brown v. Berryhill*, No. 3:16-cv-1344-J-34JRK, 2017 WL 6541455, at \*5 (M.D. Fla. Nov. 28, 2017) (finding ALJ's reliance on DHO's summary of evidence before the CPD insufficient to support medical improvement finding), *report and recommendation adopted*, 2017 WL 6536741 (M.D. Fla. Dec. 21, 2017).

Because the ALJ did not compare the pre-CPD evidence with the post-CPD evidence, the finding that Rivera's disability ceased is not supported by substantial evidence or correct application of the law.   Accordingly, remand is required for development of the record with the medical evidence before the CPD[6] and reconsideration of the medical improvement finding based on correct application of the law.   *See* 20 C.F.R. § 404.1594(c)(3)(v) (describing the steps to be taken if the previous file cannot be located).

---

[6] Rivera argues that there is additional missing evidence that was in the application file before the CPD. Doc. No. 15, at 10.   On remand, the record must be fully developed with all of the evidence in the file before the CPD.

11

NOT FOR PUBLICATION

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the matter be **REMANDED** for further proceedings.   I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

### Notice.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

**Respectfully Recommended** this 1st day of October 2018.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE